UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HOLLY M.,[1]

                  Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

<u>DECISION & ORDER</u>

20-CV-6863MWP

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Holly M. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 14).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 10, 11).  For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1]  Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

I.   **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)     whether the claimant is currently engaged in substantial gainful activity;

(2)     if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)     if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

> (4)    if not, whether despite the claimant's severe impairments,
>        the claimant retains the residual functional capacity
>        [("RFC")] to perform [his/her] past work; and
>
> (5)    if not, whether the claimant retains the [RFC] to perform
>        any other work that exists in significant numbers in the
>        national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'"  *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.    **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating

disability claims.  Under step one of the process, the ALJ found that plaintiff had not engaged in

substantial gainful activity since October 16, 2017, the application date.  (Tr. 25).[2]  At step two,

the ALJ concluded that plaintiff had the following severe impairments: heart disease, anxiety

disorder, and depressive disorder.  (*Id.*).  The ALJ also found that plaintiff had a nonsevere

obesity impairment.  (Tr. 26).  At step three, the ALJ determined that plaintiff did not have an

impairment (or combination of impairments) that met or medically equaled one of the listed

impairments in the Listings.  (*Id.*).

The ALJ concluded that plaintiff retained the RFC to perform sedentary work but

with certain limitations.  (Tr. 28-29).  Specifically, the ALJ found that plaintiff could

---

[2]  The administrative transcript (Docket # 9) shall be referred to as "Tr. ___," and references thereto utilize
the internal Bates-stamped pagination assigned by the parties.

occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.  (Tr. 28).

Moreover, plaintiff was limited to standing or walking for a total of two hours and sitting for a

total of six hours in an eight-hour workday with normal breaks, could never climb ladders, ropes,

and scaffolds, had certain weight carrying and lifting restrictions, and "must avoid exposure to"

unprotected heights, moving mechanical parts, and operating heavy machinery.  (*Id.*).  The ALJ

further found that plaintiff could understand, retain, and follow simple instructions and could

sustain sufficient attention to perform simple, repetitive, and routine tasks with no strict

production pace or assembly line quotas.  (Tr. 29).  In addition, plaintiff, when accompanied by

only occasional interactions with coworkers, supervisors, and the public, was sufficiently capable

of responding appropriately to usual work situations and dealing with changes in a routine work

setting.  (*Id.*).  Finally, the ALJ permitted plaintiff to be off task between five-to-seven percent of

the workday in addition to regularly scheduled breaks and to have no more than one unscheduled

or unanticipated absence per month.  (*Id.*).

At step four, the ALJ found that plaintiff had no past relevant work.  (Tr. 32).  At

step five, the ALJ determined that other jobs existed in significant numbers in the national

economy that, based on her age, education, work experience, and RFC, plaintiff could perform,

such as document preparer and address clerk.  (*Id.*).  Accordingly, the ALJ found that plaintiff

was not disabled.  (Tr. 33).


III.    <u>**Plaintiff's Contentions**</u>

Plaintiff argues that the ALJ's determination that she is not disabled is not

supported by substantial evidence and is the product of legal error.  (Docket # 10-1).

Specifically, plaintiff maintains that the mental portion of the ALJ's RFC assessment conflicts

with certain of the limitations opined by consultative psychologist Todd Deneen ("Deneen"),

PsyD, even though the ALJ found Dr. Deneen's opinion to be "persuasive." (*Id.* at 9-11). In

addition, plaintiff argues that the mental RFC assessment contains "highly specific" limitations

that the ALJ neither properly explained nor based upon record evidence. (*Id.* at 11-12). Finally,

plaintiff asserts that the ALJ erred in failing to develop the record with intelligence testing and

treating source opinion evidence regarding her mental health impairments, especially considering

plaintiff's *pro se* status at the administrative hearing level. (*Id.* at 12-14).[3]


**IV.   Analysis**

    **A.   The ALJ's Mental RFC Determination is Supported by Substantial Evidence**

        I turn first to plaintiff's contentions that the mental RFC is not supported by

substantial evidence. (*See id.* at 9-12). An individual's RFC is her "maximum remaining ability

to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v.*

*Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Soc. Sec. Ruling 96–8p, 1996 WL 374184, *2

(1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities,

mental abilities, symptomology, including pain and other limitations which could interfere with

work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221

(N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider

all the relevant evidence, including medical opinions and facts, physical and mental abilities,

non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*,

---

[3]  Plaintiff's contentions relate only to the mental component of the ALJ's RFC determination. Therefore, I
address only the mental portion of the RFC. *See, e.g.*, *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 394
n.3 (W.D.N.Y. 2018) ("[p]laintiff challenges only those portions of his RFC relating to his mental limitations[;] . . .
[a]ccordingly, this [d]ecision and [o]rder addresses the RFC only as it pertains to [p]laintiff's mental limitations").

2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

   For the following reasons, I find that the ALJ's mental RFC determination is supported by substantial evidence.

### 1.  <u>The ALJ's Consideration of Dr. Deneen's Opinion</u>

   First, plaintiff contends that the ALJ failed to adequately explain why certain of Dr. Deneen's opined mental limitations – particularly those relating to plaintiff's ability to respond to usual work situations and deal with changes in a routine work setting – were not accounted for in the RFC. (Docket # 10-1 at 9-11). This is error, plaintiff maintains, because the ALJ found Dr. Deneen's consultative opinion (which is the only medical opinion addressing plaintiff's mental functional ability) to be "persuasive." (*Id.*). The Commissioner responds that the ALJ "properly incorporated Dr. Deneen's opinion into the RFC reflecting each of the doctor's limitations." (Docket # 11-1 at 9). I agree with the Commissioner.

   The Commissioner has implemented new regulations relating to the evaluation of medical opinion evidence for claims filed on or after March 27, 2017, which apply here.[4] *See generally* 20 C.F.R. §§ 404.1520c, 416.920c. Under these new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[,] . . . including those from [a claimant's] medical sources." *Id.* at §§ 404.1520c(a), 416.920c(a); *accord Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, *6 (N.D.N.Y. 2021) ("[a]ccording to the new regulations, the Commissioner will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion") (quotations omitted); *Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136, *14

---

  [4] Plaintiff protectively filed her claim for SSI on October 16, 2017. (*See* Tr. 167).

(S.D.N.Y. 2020) ("the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion") (citation omitted), *report and recommendation adopted by*, 2021 WL 134945 (S.D.N.Y. 2021).  "Instead, an ALJ is now obligated to evaluate the persuasiveness of 'all of the medical opinions' based on the same general criteria: (1) supportability; (2) consistency with other evidence; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) other relevant case-specific factors 'that tend to support or contradict a medical opinion or prior administrative medical finding.'"  *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 154 (N.D.N.Y. 2021) (footnote omitted) (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5)).

　　　　　According to the regulations, "supportability" and "consistency" are the "most important" factors in evaluating the persuasiveness of medical opinion evidence.  20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).  Indeed, "[a]n ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion," *Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283 at *7 (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)), and need not discuss the remaining factors, *see Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136 at *14.  As it relates to the "supportability" factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  With regard to the "consistency" factor, the regulations state that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under these new regulations, "the ALJ must provide information sufficient to allow a reviewer 'to trace the path of an adjudicator's reasoning.'" *Alisa O. v. Comm'r of Soc. Sec.*, 2021 WL 3861425, *4 (W.D.N.Y. 2021) (quoting 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017)). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, 2020 WL 5848776, *5 (N.D.N.Y. 2020) (quotations and citation omitted). Nevertheless, "an ALJ is not required to adopt a medical opinion in its entirety and may determine an RFC that differs from a medical opinion, where these differences are supported by substantial evidence in the record and are not the product of legal error." *Ferraras-Matos v. Comm'r of Soc. Sec.*, 2021 WL 7287630, *18 (S.D.N.Y. 2021) (collecting cases), *report and recommendation adopted by*, 2022 WL 292921 (S.D.N.Y. 2022); *Jeffrey G. v. Comm'r of Soc. Sec.*, 2021 WL 4844146, *10 (N.D.N.Y. 2021) ("[e]ven if the ALJ had effectively rejected a portion of [a medical opinion she found persuasive] in rendering an RFC allowing for head movement, she was under no obligation to accept the consultative examiner's opinion as a whole").

Here, consultative psychologist Todd Deneen, PysD, completed a psychiatric evaluation of plaintiff on December 20, 2017. (Tr. 606-10). At that time, plaintiff reported to Dr. Deneen that she had graduated from high school, but had a history of special education and use of an individualized education program ("IEP"), although she "d[id] not know why" she had an IEP. (Tr. 606).[5] Plaintiff told Dr. Deneen that she was not currently employed and did not

---

[5] Plaintiff's educational history is not consistently documented in the record. For instance, in addition to her report to Dr. Deneen, plaintiff told the ALJ during the administrative hearing that she had a "learning disability" and had received an "IEP diploma." (Tr. 55). In her adult disability report, however, plaintiff indicated that she had completed high school and had not attended special education classes. (Tr. 184).

have any work history and that she was unable to work because of her heart condition. (*Id.*). Plaintiff had no history of inpatient psychiatric hospitalizations, denied outpatient mental health therapy, and stated that she had no previous mental health diagnosis. (*Id.*). She was hospitalized in 2017 when her defibrillator and pacemaker "went off." (*Id.*). Plaintiff also stated that she had difficulty sleeping, exhibited depressive symptomology such as poor sleep, social withdrawal, and suicidal thoughts (but had no recent suicidal thoughts), anxiety-related symptoms including nervousness, during which she felt fluctuations and heart palpitations, and panic symptoms including crying, palpitations, and breathing difficulties, experienced trauma connected to her history of sexual abuse that caused nightmares, complained of short-term memory deficits, and described her prominent mood as apathetic but sometimes bright. (Tr. 606-607). Plaintiff indicated that her medications were helpful and that she was compliant with them, but that she was not receptive to psychotherapy at that time. (Tr. 607).

On mental status examination, Dr. Deneen observed that plaintiff's demeanor was resistant and immature and that her social skills were poor. (*Id.*). Plaintiff had appropriate posture, motor behavior, and eye contact, her speech was described as "intelligibility fluent," her expressive and receptive language was adequate, and her thought processes were coherent and goal-directed without evidence of hallucinations, delusions, or paranoia in the evaluation setting. (*Id.*). In addition, although plaintiff's affect was anxious, which impaired her attention and concentration, her mood was neutral and she had clear sensorium, she was fully-oriented and could count and perform simple math calculations, but she could not perform serial sevens from one hundred or serial threes from twenty. (Tr. 607-608). Dr. Deneen further indicated that plaintiff's recent and remote memory skills were intact, as she could recall three out of three objects immediately and three out of three after a delay, and she could recite five digits forward

10

and four digits backwards.  (Tr. 608).  Dr. Deneen opined that plaintiff's estimated intellectual functioning was in the borderline range and her general fund of information was somewhat limited.  (*Id.*).  Dr. Deneen noted that plaintiff had poor insight and fair judgment.  (*Id.*).

       With respect to activities of daily living, plaintiff stated that she dressed every day, showered three days per week, and typically shopped, performed childcare, did laundry, cleaned, and cooked once per week.  (*Id.*).  She indicated that her husband helped with these activities and that she was limited in her ability to perform these activities by her heart condition and anxiety.  (*Id.*).  In addition, plaintiff relied on her husband to provide transportation; she did not have a driver's license and was unable to take public transportation because of her anxiety and motion sickness.  (*Id.*).  Plaintiff stated that she socialized with her friends and that her hobbies included playing on the computer and watching television.  (Tr. 608-609).

       Dr. Deneen diagnosed plaintiff with unspecified anxiety disorder, rule-out posttraumatic stress disorder, and rule-out panic disorder, and noted that plaintiff reported diagnoses of status post myocardial infarction and hypertrophic obstructive cardiomyopathy. (Tr. 609).  Based on his examination, Dr. Deneen opined that plaintiff had "no limitation" understanding, remembering, or applying simple directions and instructions, sustaining an ordinary routine and regular attendance at work, maintaining personal hygiene and appropriate attire, and recognizing normal hazards and taking appropriate precautions.  (*Id.*).  Moreover, in Dr. Deneen's view, plaintiff had "a mild limitation" understanding, remembering, or applying complex directions and instructions and sustaining concentration and performing tasks at a consistent pace.  (*Id.*).  Finally, Dr. Deneen stated that plaintiff had "a moderate limitation" using reason and judgment to make work-related decisions, interacting adequately with supervisors, coworkers, and the public, and regulating emotions, controlling behaviors, and maintaining

11

well-being.  (*Id.*).  According to Dr. Deneen, plaintiff's limitations were caused by her lack of

motivation and anxiety, and although the results of Dr. Deneen's examination "appear[ed] to be

consistent with psychiatric problems," they "d[id] not appear to be significant enough to interfere

with [plaintiff's] ability to function on a daily basis."  (*Id.*).  Dr. Deneen recommended that

plaintiff continue with her psychiatric treatment "as currently provided" and stated that plaintiff's

prognosis was good in light of her "supportive husband, her continued compliance with

treatment, and her follow[-]through in obtaining the outlined recommendations."  (Tr. 609-10).

       In determining that Dr. Deneen's consultative opinion was "persuasive," the ALJ

discussed Dr. Deneen's medical source statement, outlined the results of his mental status

examination of plaintiff, and noted plaintiff's reported activities of daily living.  (Tr. 31).  The

ALJ determined that "Dr. Deneen's opinion [was] supported by objective medical evidence

stemming [from] [plaintiff's] mental examinations [and] hearing testimony, and [was] consistent

with [plaintiff's] hand-written allegations, in regards to [her] exertional and nonexertional

limitations that support the mental restrictions to the [RFC]."  (*Id.* (citing Tr. 200-201, 607, 720,

39-60)).  The ALJ incorporated multiple limitations in the mental portion of the RFC

determination to account for plaintiff's mental health impairments.  (Tr. 29).  Specifically, the

ALJ determined that plaintiff:

> [c]an understand, retain, and follow simple instructions, and
> sustain sufficient attention to perform simple, repetitive, and
> routine tasks with no strict production pace or assembly line
> quotas; accompanied by occasional interactions with coworkers,
> supervisors and the public, and [plaintiff] has the sufficient
> capability to respond appropriately to usual work situations and
> deal with changes in a routine work setting; and is allowed off task
> between 5% - 7% of the work day in addition to regularly
> scheduled breaks and have no more than one unscheduled or
> unanticipated absence per month.

(*Id.*).

Plaintiff challenges the ALJ's finding that she "had a full ability to respond appropriately to usual work situations and deal with changes in a routine work setting" on the grounds that it "directly conflicts with Dr. Deneen's opinion that [p]laintiff had moderate limitations using reason and judgment to make work-related decisions and arguably conflicts with his moderate limitation in the broad category of regulating emotions, controlling behavior, and maintaining well-being." (Docket # 10-1 at 9). Moreover, plaintiff argues that the ALJ did not explain this alleged "discrepancy." (*Id.* at 10). Upon review, I conclude that the mental portion of the ALJ's RFC determination does not conflict with Dr. Deneen's opined limitations and in fact accommodates the mental health functional limitations detailed in Dr. Deneen's medical source statement.

First, plaintiff misreads the RFC. Contrary to plaintiff's contention, the ALJ did not find that plaintiff "had a *full ability* to respond appropriately to usual work situations and deal with changes in a routine work setting." (*Id.* at 9 (emphasis supplied)). Rather, the ALJ determined that plaintiff had the "sufficient capability" to do those activities *but only when* "accompanied by occasional interactions with coworkers, supervisors and the public" (Tr. 29), which specifically accounted for Dr. Deneen's opinion that plaintiff was "moderate[ly] limit[ed]" in her ability to "interact adequately with supervisors, coworkers, and the public" (Tr. 609).

Moreover, the ALJ accommodated Dr. Deneen's opinion that plaintiff was limited in her use of reason and judgment in making work-related decisions by explicitly limiting plaintiff to "simple, repetitive, and routine tasks with no strict production pace or assembly quotas" and to work requiring "understand[ing], retain[ing], and follow[ing] [of] simple instructions." (Tr. 29). *See, e.g., Bethany A. v. Comm'r of Soc. Sec.*, 2022 WL 170405, *5 (W.D.N.Y. 2022) (mental portion of RFC limiting plaintiff to "simple routine, repetitive tasks

with additional social limitations" was consistent with consultative examiner's opinion that plaintiff was, *inter alia*, moderately limited in her ability to "use reason and judgment to make work-related decisions[,] . . . regulate emotions, control behavior, and maintain well-being"); *Barksdale v. Saul*, 2019 WL 3842358, *3 (W.D.N.Y. 2019) ("the ALJ indeed did address the limitations that [consultative examiner] noted[;] . . . [t]he RFC limitations – and especially 'limiting the claimant to the ability to sustain attention and concentration sufficient to understand, remember, and follow simple instructions' – would also account for [plaintiff's] moderate limitations in using reason and judgment to make work-related decisions"). In addition, both jobs identified by the ALJ at step five – document preparer and address clerk – have a specific vocational preparation ("SVP") of two (Tr. 32), meaning that the work is "unskilled." *See Berst v. Comm'r of Soc. Sec.*, 2018 WL 3637463, *6 n.8 (W.D.N.Y. 2018) ("unskilled work corresponds to an SVP of 1-2") (brackets and citation omitted). Such work is generally consistent with Dr. Deneen's opinion that plaintiff's mental health impairments caused no more than moderate limitations in her functional abilities. *See*, *e.g.*, *Bethany A. v. Comm'r of Soc. Sec.*, 2022 WL 170405 at *5 ("[a] finding of moderate limitations in mental functioning does not preclude the ability to perform unskilled work[;] [t]he Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work") (collecting cases); *Cory W. v. Comm'r of Soc. Sec.*, 2021 WL 5109663, *5 (W.D.N.Y. 2021) ("[m]oderate mental limitations do not necessarily indicate disabling functional restrictions that would prevent a claimant from performing the basic mental demands required for unskilled work") (collecting cases). On this record, I find that plaintiff has not identified any conflict between Dr. Deneen's opined limitations and the ALJ's mental RFC assessment and that remand is thus not warranted on this basis.

2.     **The ALJ's "Highly Specific" RFC Findings**

Second, plaintiff argues that remand is warranted because the ALJ reached the "highly specific" portions of the mental RFC determination – those permitting plaintiff off-task time between five-to-seven percent of the workday and one unscheduled or unanticipated absence per month – without any explanation or basis in the record.  (Docket # 10-1 at 11-12).  I disagree.

As the Commissioner points out, plaintiff does not cite any evidence in the record that contradicts the ALJ's finding that plaintiff "is allowed off task between [five-to-seven percent] of the work day in addition to regularly scheduled breaks and . . . no more than one unscheduled or unanticipated absence per month."  (Tr. 29).  Further, the ALJ here found Dr. Deneen's opinion to be persuasive, and the ALJ's decision suggests that he fashioned the RFC based upon Dr. Deneen's opinion and additional restrictions based upon plaintiff's own testimony, such as her testimony that "[w]orking so hard that [she does not] get a break from anything" can affect her anxiety, stress, and heart rate (Tr. 48-49) and that she has trouble finishing tasks because she tires herself out "after a time" (Tr. 204).  Where plaintiff has cited no record evidence supporting more substantial off-task limitations, I do not find that remand is warranted under these circumstances.  *See, e.g.*, *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) (summary order) ("[t]he fact that the ALJ assigned a particular percentage range . . . to illustrate [plaintiff's] limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence"); *Sarah S. v. Comm'r of Soc. Sec.*, 2022 WL 34468, *5 (W.D.N.Y. 2022) ("[p]laintiff agrees that the record demonstrates difficulties with attention and concentration, but appears to argue that the mere fact of assigning a percentage of time off task is erroneous per se[;] . . . [t]o the contrary, this [c]ourt finds that the ALJ's five-percent off-task

assessment is supported by substantial evidence, given [the consulting physician's] assessment that [p]laintiff would have mild limitations in maintaining attention and concentration[,] [a]nd [p]laintiff does not point to any evidence that would support a higher off-task assessment"); *Andre J. v. Kijakazi*, 2021 WL 5074719, *5 (W.D.N.Y. 2021) ("[n]or is there any merit to [p]laintiff's argument . . . that the ALJ's determination that [p]laintiff . . . would be off-task approximately 5% of the work day because of difficulty maintaining concentration and focusing[] was improper because the ALJ failed to explain his reasons for such opinion[;] . . . the ALJ relied, in formulating the 5% additional time off-task, on [p]laintiff's testimony and medical evidence of [p]laintiff's activities of daily living"); *Dominique M. v. Comm'r of Soc. Sec.*, 2021 WL 3931141, *4 (W.D.N.Y. 2021) ("[t]o be sure, no medical source in the record stated plaintiff would be off-task a specific percentage of the workday, but the ALJ properly explained he included an off-task limitation to account for position changes and concentration difficulties that plaintiff may have as a result of her pain or pain medications"); *Lisa M. v. Comm'r of Soc. Sec.*, 2021 WL 3513832, *4 n.4 (W.D.N.Y. 2021) ("[p]laintiff contends, again without citing any contradictory evidence, that the ALJ failed to explain his determination that plaintiff would be off task five percent of the workday, maintaining that this error alone warrants reversal[;] . . . the ALJ here gave great weight to the only medical opinion in the record assessing plaintiff's mental functioning, and the ALJ's decision suggests that he fashioned the RFC based upon [the consulting] opinion and the incorporation of additional restrictions based upon plaintiff's own testimony, such as her testimony that she has difficulty with concentration and stress"); *Thomas S. v. Comm'r of Soc. Sec.*, 2021 WL 1293105, *4 (W.D.N.Y. 2021) ("the ALJ did not commit remandable error in making a determination that [p]laintiff would be off-task 5% of the workday where the limitation did not correspond to a specific medical source opinion" but was

otherwise supported by substantial evidence); *Hallman v. Comm'r of Soc. Sec.*, 2020 WL

3259255, *4 (W.D.N.Y. 2020) ("[i]t is reasonable that the ALJ would afford plaintiff an off-task

allowance to account for his subjective complaints[;] [t]herefore, substantial evidence supported

the ALJ['s] RFC determination that plaintiff would be off-task 3% of the workday"); *Lesanti v.

Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("[t]he fact that the ALJ

afforded [p]laintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC

assessment is not grounds for remand"); *Beaman v. Comm'r of Soc. Sec.*, 2020 WL 473618, *5

(W.D.N.Y. 2020) ("[p]laintiff's argument that the ALJ based her highly specific RFC based

upon her own lay opinion necessarily fails[;] [i]t is clear that the ALJ fashioned her RFC finding

by referring to [the consultative examiner's] opinion and incorporating additional restrictions

based on [p]laintiff's own testimony").

        In sum, I find that the mental portion of the RFC determination is supported by

substantial evidence. Apart from Dr. Deneen's consultative opinion (which is consistent with the

ALJ's RFC finding), the record contains very limited evidence regarding plaintiff's mental

health impairments. As referenced above, at the time of Dr. Deneen's examination in December

2017, plaintiff indicated that she had no prior mental health treatment or diagnoses and was not

receptive to receiving psychotherapy. (Tr. 606-607). In fact, only two notes in the record reflect

appointments specifically to address plaintiff's diagnosed depression, anxiety, and posttraumatic

stress disorder: one from May 31, 2019 and the other from June 27, 2019, both of which were

prepared by nurse practitioner Katie Rauber ("Rauber") at Strong Behavioral Health. (*See*

Tr. 677, 685). Neither note is inconsistent with Dr. Deneen's observations and opinions or the

ALJ's ultimate RFC findings. The record also reveals that plaintiff's mental impairments

improved with medication. (*See, e.g.*, Tr. 607 (plaintiff reporting to Dr. Deneen that her

"medications are helpful"); Tr. 681 (June 20, 2019 treatment note: "[plaintiff] discussed depression currently on [W]ellbutrin and feeling much better"); Tr. 687 (Rauber noting that plaintiff "demonstrat[ed] improvement in symptoms"); Tr. 53 (plaintiff testifying at the administrative hearing that her medication has improved her symptoms: "[m]y mood's better, I'm happier[;] I'm more level-headed now[;] I'm more down to [e]arth")).  On this record, I find that the ALJ's mental RFC assessment adequately accounts for plaintiff's mental health impairments and is supported by substantial evidence.

      **B.**      **<u>The ALJ Did Not Fail to Develop the Record</u>**

      Finally, I turn to plaintiff's argument that the ALJ failed to develop the record as it pertains to her mental health impairments.  (Docket # 10-1 at 12-14).  Specifically, plaintiff contends that the ALJ erred by "never advis[ing] [plaintiff] of the importance of contacting her treating physicians to submit opinions regarding her ability to do work" even though plaintiff proceeded *pro se* at the administrative hearing[6] and by not ordering an intelligence test in view of plaintiff's testimony that "she had a learning disability and was in special education in school, and [Dr. Deneen's] f[inding] on mental status exam that she had estimated borderline intelligence."  (*Id.*).  For the following reasons, I find that the ALJ did not err in failing to develop the record and that remand is not warranted on this basis.

      "It is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding."  *Martello v. Astrue*, 2013 WL 1337311, *3 (W.D.N.Y. 2013).  Given the non-adversarial nature of a Social Security hearing, "[t]he duty of

---

     [6]  Plaintiff waived her right to representation at the administrative hearing.  (Tr. 41-42).

the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'"  *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Butts*, 388 F.3d at 386).  Accordingly, before determining whether the ALJ's conclusions are supported by substantial evidence, a court must first evaluate whether the claimant was provided a full hearing "in accordance with the beneficent purposes of the [Social Security] Act."  *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *see Dougherty-Noteboom v. Berryhill*, 2018 WL 3866671, *7 (W.D.N.Y. 2018) (ALJ's duty to develop the record "is a threshold requirement for the SSA; the ALJ must develop the record prior to assessing whether a claimant is disabled"); *see also Archbald v. Colvin*, 2015 WL 7294555, *3 (E.D.N.Y. 2015) ("[t]he reviewing court must ensure that all of the relevant facts [are] sufficiently developed and considered") (quotations omitted).

Moreover, "[t]he ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment."  *Ramos v. Colvin*, 2015 WL 925965, *9 (W.D.N.Y. 2015) (quotations omitted).  In addition, "[w]hen a claimant properly waives his right to counsel and proceeds *pro se*, the ALJ's duties are [also] 'heightened.'"  *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  When a claimant proceeds *pro se*, "[t]he ALJ must adequately protect [the] *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered and by scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts."  *Id.* at 113 (brackets and quotations omitted) (citing *Cruz v. Sullivan*, 912 F.2d at 11).  The ALJ's duty to develop the record is not, however, without limits; specifically, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of

rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotations omitted).

As it relates to treating source opinion evidence, plaintiff's view is that such evidence "would have been particularly valuable . . . because [p]laintiff's testimony indicated that it was not merely her physical condition that would cause her to be unable to work, but rather a combination of physical and psychological factors including excessive anxiety in the specific structured setting of work[] that would render her unemployable." (Docket # 10-1 at 14). To be sure, the record does not contain any opinion evidence from a treating source regarding plaintiff's mental health impairments or related functional limitations. That said, the ALJ's "failure to procure treating source opinions does not automatically require remand." *Mary D. v. Kijakazi*, 2021 WL 3910003, *6 (D. Conn. 2021). Instead, "[t]he question becomes whether the record contained sufficient evidence from which the ALJ could derive plaintiff's RFC, such that the ALJ's failure to seek opinions from all of plaintiff's treating sources does not necessitate remand." *Id.* Based on my review of the record, I conclude that the ALJ had sufficient evidence from which to assess plaintiff's RFC without the need for any treating source opinion evidence and that the record itself contained no obvious gaps suggesting that the ALJ did not have plaintiff's complete medical history.

In reaching the mental portion of the RFC, the ALJ relied principally on Dr. Deneen's opinion, which was proper. *See, e.g.*, *Ricky K. v. Comm'r of Soc. Sec.*, 2022 WL 61008, *5 (W.D.N.Y. 2022) ("it is well-settled that, under both the old and the new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a . . . state agency consultant in disability claims") (bracket and internal quotation omitted). The ALJ also relied on plaintiff's own hearing testimony and her adult function report regarding the extent of

20

her symptoms and her activities of daily living, as well as on certain treatment notes in the record revealing plaintiff's mental status on examination.  (*See* Tr. 31 (citing Tr. 200-201, 607, 720, 39-60)).  Even though the evidence regarding plaintiff's mental health impairments is quite limited, plaintiff has not identified any "obvious gaps" in the record or other evidence that the ALJ failed to consider in reaching the RFC.  Plaintiff has not even indicated which treating sources she believes the ALJ should have contacted, nor has she suggested what those unidentified sources would reveal.  On these facts, I find that the record before the ALJ was sufficient for him to reach an RFC determination and that he was not required to obtain treating source opinion evidence.  *See, e.g.*, *Sarah C. v. Comm'r of Soc. Sec.*, 2021 WL 1175072, *10 (N.D.N.Y. 2021) (rejecting argument that the ALJ erred by not obtaining treating source opinion evidence where the record contained, and the ALJ relied upon, opinions from examining and non-examining sources, plaintiff's "disability reports, function report, work history report, and hearing testimony," and medical records and progress reports from healthcare providers; "so long as the record has no obvious gaps and contains sufficient evidence for the ALJ to render an RFC finding, [an ALJ] has no duty to recontact treating sources for statements or opinions[;]. . . [g]enerally, th[e] evidence [relied upon by the ALJ] indicates that most of [p]laintiff's conditions are either improving or under control and that most test and examination findings are normal[;] [t]herefore, it appears that the record has no obvious gaps and contains consistent and sufficient evidence to support the ALJ's RFC finding without her having to recontact [p]laintiff's treating physicians"); *Jachowdik v. Comm'r of Soc. Sec.*, 2021 WL 1894573, *9 (E.D.N.Y.) ("[h]ere, the [c]ourt finds [p]laintiff's argument that the ALJ failed to adequately develop the record to be without merit[;] [p]laintiff does not identify or explain (1) how the ALJ's questioning of the [p]laintiff was deficient; (2) which, if any, treating sources should have been re-contacted and for

what purpose; or (3) what medical opinions or treatment records regarding [p]laintiff's physical impairments were not obtained by the ALJ[;] [m]oreover, the [p]laintiff does not identify any 'obvious gaps' in the record triggering the ALJ's obligation to seek out additional evidence and, upon review, the [c]ourt finds none"), *report and recommendation adopted by*, 2021 WL 1890018 (E.D.N.Y. 2021); *Amanda L. C. v. Comm'r of Soc. Sec.*, 2020 WL 4783169, *5 (N.D.N.Y. 2020) ("[t]he [c]ourt additionally notes that this is not a case in which the ALJ lacked any opinion from a medical source to guide his analysis of the RFC[;] [r]ather the ALJ explicitly relied on opinions from the two consultative examiners and the nonexamining [s]tate [a]gency physician, balancing those opinions with the totality of the medical and other evidence in the record[;] [g]iven the significant amount of medical records obtained and the presence of (and the ALJ's reliance on) other medical opinions, the [c]ourt declines to find that there was any gap in the record that required the ALJ to obtain an opinion from a treating physician in order to make a valid decision regarding [p]laintiff's disability status"); *Rhone v. Berryhill*, 2018 WL 1282823, *7 (S.D.N.Y. 2018) ("[plaintiff] does not identify the treating sources he contends were not considered[;] [n]or does he identify any additional records that he believes should have been obtained and reviewed by the ALJ[;] . . . [i]n light of the robust medical record before the ALJ, and [plaintiff's] failure to identify with specificity any way in which that record was lacking, the [c]ourt finds that the record was sufficient and [the ALJ] did not fail to adequately develop the record").

Nor did the ALJ err by not ordering an intelligence examination of plaintiff. As the Commissioner points out (*see* Docket # 11-1 at 16), plaintiff did not allege disability based upon an intellectual impairment. (*See* Tr. 124). Moreover, there is limited evidence in the record documenting plaintiff's cognitive deficiencies, namely, plaintiff's mention of a learning

disability in her testimony at the administrative hearing (*see* Tr. 55)[7] and Dr. Deneen's opinion that plaintiff's "estimated intellectual functioning was in the borderline range" and that her "[g]eneral fund of information was somewhat limited" (Tr. 608).

Nothing in the record (or in plaintiff's argument), however, suggests that these deficiencies caused functional limitations beyond those accounted for in the RFC.  Specifically, despite noting cognitive deficiencies, Dr. Deneen did not opine that those impairments affected plaintiff's ability to work.  Instead, he opined that the limitations identified in his medical source statement were caused by plaintiff's "lack of motivation and anxiety" and that, in any event, plaintiff could still perform simple and routine work.  (Tr. 609).  In addition, treatment notes in the record post-dating Dr. Deneen's opinion reflect that plaintiff had an "[a]verage" fund of knowledge (Tr. 679) and that her cognitive functioning demonstrated "[a]verage intelligence" (Tr. 687).  On this record, the few references to plaintiff's learning disability and cognitive deficiencies did not require the ALJ to order further intelligence examinations of plaintiff.  *See*, *e.g.*, *Hyshaw v. Comm'r of Soc. Sec.*, 797 F. App'x 671, 672 (2d Cir. 2020) (summary order) (rejecting argument that the record contained obvious gaps "requiring the ALJ to conduct a formal intelligence examination" where consultative sources "concluded that [plaintiff] could perform simple work despite her cognitive limitations"); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (summary order) ("[m]oreover, to the extent that the record supported a finding that [plaintiff] faced cognitive limitations, those limitations were incorporated into the assessment of [plaintiff's] RFC: the ALJ found that [plaintiff] could not perform work that required complex or detailed instructions[;] [t]he record does not suggest any further limitation that would necessitate a consultative intelligence examination") (alterations

---

[7] As noted above (*see supra* n.4), there are discrepancies in the record regarding the extent to which plaintiff received special education while in school.

and quotations omitted); *Bethany A.*, 2022 WL 170405 at *6 ("the ALJ did not err in failing to

order intelligence testing[;] . . . [t]he ALJ found [consultative examiner's] opinion persuasive and

her opinion, together with the record as a whole, supports the ALJ's mental RFC limitations[;]

[d]espite noting suspected cognitive deficits, [the consultative examiner] ultimately opined

[p]laintiff was capable of performing simple, routine, repetitive work[;] . . . [p]laintiff did not

allege cognitive impairments in her application[;] . . . [t]herefore, the ALJ was not obligated to

order additional testing") (quotations omitted); *Washington v. Astrue*, 2012 WL 6044877, *3

(N.D.N.Y. 2012) (ALJ not obligated to order a consultative intelligence examination where

consultative examiner "estimated [plaintiff's] intellectual functioning to be in the borderline to

low average range" but "went on to opine . . . that [plaintiff] c[ould] follow and understand

simple directions and instructions and [was] able to maintain attention and concentration fairly

well") (alterations and quotations omitted).

## <u>CONCLUSION</u>

After a careful review of the entire record, this Court finds that the

Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a

matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the

Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **GRANTED**.  Plaintiff's

motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and plaintiff's complaint

(Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
June 15, 2022